IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN PHELPS, # K-78191, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 14-cv-00891-JPG |
| | ) |
| C/O PHILLIPS, WARDEN GAETZ, | ) |
| and S. A. GODINEZ, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Kevin Phelps, an inmate who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* based on an incident that occurred while he was incarcerated at Pinckneyville Correctional Center. (Doc. 1). Plaintiff is paraplegic and confined to a wheelchair. Plaintiff claims that Defendants failed to protect him against an attack by another inmate, despite prior knowledge that an assault was likely. Plaintiff seeks monetary damages from Defendants.

**Merits Review Under 28 U.S.C. § 1915A**

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). After reviewing the allegations in the complaint under this standard, the Court finds that the complaint survives threshold review.

**<u>The Complaint</u>**

Plaintiff is paraplegic and confined to a wheelchair. (Doc. 1, p. 5). At the time of the incident giving rise to this action, Plaintiff was incarcerated at Pinckneyville in a cell that he claims was designed "for two A.D.A. inmates" but housed four inmates: two "A.D.A. inmates" and two inmates with no apparent disabilities. *Id*.

On July 6, 2013, Plaintiff was, in his words, "assaulted" by one of his non-disabled cellmates. (Doc. 1, p. 5). Plaintiff pushed the emergency call button to request help. *Id*. Ten

minutes later, at 10:23 p.m., Defendant C/O Phillips came to Plaintiff's cell. Plaintiff told Defendant Phillips that his cellmate was threatening to beat him up; the cellmate who had threatened Plaintiff also told Defendant Phillips to get Plaintiff out of the cell or he would do something to him because Plaintiff was a snitch. *Id*. Plaintiff asked Defendant Phillips if he could call a lieutenant, but Phillips refused stating it was too late to call anyone because they were all getting ready to go home. *Id*. at 5-6. Plaintiff responded that he feared for his safety. Phillips replied, "You're a big boy, you can handle the ass-kicking." *Id*. at 6. Plaintiff asserts that he weighs only about 125 pounds while the inmate who assaulted him weighed 280 pounds or more. *Id*. The cellmate who had threatened Plaintiff asked Phillips if he was going to move him or Plaintiff out of the cell. Phillips then stated, "I ain't moving nobody, if you going to do something, do it." *Id*. The cellmate told Phillips that he was going to beat Plaintiff's ass; Phillips responded, "I've been standing here for about 15 minutes and you ain't did shit." *Id*. The cellmate then turned around and punched Plaintiff in the side of the head and "dumped" Plaintiff out of the wheelchair. The cellmate then proceeded to kick Plaintiff in the back, ribs, head, and arms all while Defendant Phillips stood watching. *Id*. After about four minutes, two more correctional officers came in and pulled the cellmate off Plaintiff and helped Plaintiff back into his wheelchair. *Id*. at 7. Afterwards, Plaintiff alleges that Defendant Phillips laughed and said, "He really gave you a beat down." *Id*. The complaint does not mention what, if any, injuries Plaintiff received or if he required medical treatment.[1] *Id*.

The complaint also vaguely asserts that Plaintiff's rights under the ADA were violated as a result of Plaintiff being housed with non-disabled inmates. *Id*. at 5. Plaintiff alleges that he feared for his safety and had filed a number of grievances to this effect prior to the attack on July

---

[1] Under the Prison Litigation Reform Act, absent an accompanying physical injury, a court may not award compensatory damages for nonphysical harm, such as fear of attack. *See* 42 U.S.C. § 1997e(e). However, nominal and punitive damages remain available. *See Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003).

6, 2013. *Id*. The body of the complaint itself does not state any other facts related to an ADA claim; however, attached to the complaint are five grievances Plaintiff filed over the course of two years regarding cell conditions that he claimed violated his rights under the ADA. *Id*. at 12-22. For example, Plaintiff grieved that his cell was designed to house two "ADA-inmates," but instead housed four inmates, which made it very difficult for him to maneuver around in his wheelchair. *Id*. He further complained that housing disabled and non-disabled inmates together puts disabled inmates at risk because they are unable to adequately defend themselves in the case of an attack. *Id*. In addition, he asserted that he lacked certain equipment and the cell was not designed to accommodate his disability. *Id*. The first grievance, filed July 16, 2011, was denied as untimely. *Id*. at 12. In response to a subsequent grievance, the counselor's response was: "Past 60 day timeframe allowed per DR 504. I/M has been housed with 3 other I/M's since 5/6/11." *Id*. at 16. Subsequent grievances were denied on the grounds that they were duplicates.

Since the incident on July 6, 2013, Plaintiff has been transferred to Lawrence Correctional Center. *Id*. at 1. Plaintiff asserts no complaints regarding the condition of his current housing arrangement. In his prayer for relief, Plaintiff seeks monetary damages. *Id*. at 8.

**Discussion**

Based on the allegations in the complaint, the Court finds it convenient to divide this *pro se* action into two counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

    Count 1:     **Eighth Amendment failure to protect claim**

    Count 2:     **Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and/or Rehabilitation Act, 29 U.S.C. §§ 794-94e claim**

**Count 1**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, defendants had to know that there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). Moreover, courts look to how a defendant responds once an assault occurs: "[e]ven if an official is found to have been aware that [the inmate] was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner." *Fisher v. Lovejoy,* 414 F.3d 659, 664 (7th Cir.2005).

In the present case, Phelps has pled sufficient facts to state a claim against Defendant Phillips for failure to protect him from a known, specific threat of assault by another inmate after Phelps relayed the threat and requested protection. Plaintiff shall be allowed to proceed with his Eighth Amendment failure to protect claim (Count 1) against Defendant Phillips, in his individual capacity only.

Plaintiff also names Gaetz (the warden at Pinckneyville at the time of the incident) and Godinez (director of the Illinois Department of Corrections) as Defendants in the caption, but makes no specific or even vague allegation against either of them in the body of the complaint. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Plaintiffs are required to associate specific defendants with specific claims so that defendants are put on notice of the claims brought against them and can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.

It is likely that Gaetz and Godinez were named as Defendants because of their supervisory roles. This is also not enough to state a claim against them. The doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Plaintiff has not alleged that either Defendant Gaetz or Godinez is "personally responsible for the deprivation of a constitutional right," *id.*, and a Defendant cannot be liable merely because he supervised a person who caused a constitutional violation. Accordingly, Plaintiff may not proceed on Count 1 against Defendants Gaetz or Godinez in their individual capacities.

Finally, official capacity claims are limited in this context to requests for injunctive relief. *See Brown v. Budz*, 398 F.3d 904, 917-18 (7th Cir. 2005) (noting that the Eleventh Amendment bars official capacity claims for monetary damages). In his request for relief, Plaintiff does not specifically seek injunctive relief. In addition, Plaintiff has since been transferred to another facility and the complaint does not suggest that his failure to protect claim extends beyond the

specific incident discussed in the complaint. Therefore, since injunctive relief on this claim is moot, Plaintiff may not proceed on this claim against any of the Defendants in their official capacities.

**Count 2**

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794-94e seek to prohibit discrimination by public entities on the basis of disability.[2] The ADA provides that "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). Likewise, the RA prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. Discrimination under both statutes includes the failure to accommodate a disability. Analysis of claims under the ADA and RA is the same, except that the RA includes as an additional element the receipt of federal funds, which all states accept for their prisons. *Jaros v. Illinois Department of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)).

In the present case, Plaintiff is wheelchair-bound and therefore disabled according to the ADA and RA. 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A). A more difficult question is whether Plaintiff has stated facts sufficient to support a plausible allegation that Defendants discriminated against him or failed to accommodate him because of his disability. Plaintiff alleges that the double-bunking in his cell made it difficult for him to maneuver around his cell in his wheelchair. Moreover, Plaintiff repeatedly expressed concerns about the crowded nature

---

[2] The fact that the complaint does not mention the RA is of no consequence at this stage. Courts "are supposed to analyze a litigant's claims and not just legal theories that he propounds," particularly when a litigant is proceeding *pro se*. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (citations omitted).

of the cell and his fear of being housed with non-disabled inmates, who he believed he could not protect himself against. Liberally construing the complaint and the attached exhibits, as the Court must do with *pro se* litigants, the Court finds that Plaintiff has set forth enough facts at this preliminary stage to proceed on this Count. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) (finding that inmate who claimed that he was confined to a cell so small that he could not move his wheelchair and that he was forced to sit in his own bodily waste because officials refused to help had adequately stated a claim under the ADA).

However, the ADA and RA claims cannot proceed against the individual defendants named in connection with the claim. Individual employees of the IDOC cannot be sued in their individual capacities under the ADA or RA. *Jaros*, 684 F.3d at 670. The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Plaintiff has named Defendant Godinez, the Director of the IDOC, as one of the defendants in this action. Plaintiff shall be allowed to proceed on Count 2 against Defendant Godinez, in his official capacity only. This claim shall be dismissed against Defendant Godinez, in his individual capacity, and against all other Defendants, in their individual and official capacities.

**Pending Motion**

Plaintiff has filed a motion for recruitment of counsel (Doc. 3), which shall be referred to a United States Magistrate Judge for a decision.

Plaintiff's motion for service of process at government expense (Doc. 4) is unnecessary and, therefore, **DENIED** as **MOOT**.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's claim for damages on **COUNT 1** shall proceed, but only against Defendant **PHELPS**, in his individual capacity.

**IT IS FURTHER ORDERED** that Plaintiff may proceed on **COUNT 2**, but only against Defendant **GODINEZ,** in his official capacity.  Defendant **GAETZ** is **DISMISSED** without prejudice from this action.

The Clerk of Court shall prepare for **DEFENDANT PHELPS (who remains in this action in his individual capacity only)** and **GODINEZ (who remains in this action in his official capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.

Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than

**7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: September 9, 2014**

*s/ J. Phil Gilbert*
United States District Judge
