## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN PHELPS, #K78191 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:14-cv-00891-MJR-SCW |
| | ) | |
| C/O PHILLIPS and | ) | |
| S.A. GODINEZ, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM AND ORDER

**WILLIAMS: Magistrate Judge:**

### I. INTRODUCTION

*Pro se* Plaintiff Kevin Phelps, an inmate currently incarcerated at Lawrence Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and/or Rehabilitation Act ("RA"), 29 U.S.C. §§ 794-94e based on an incident that occurred while he was incarcerated at Pinckneyville Correctional Center. (Doc. 1). Plaintiff alleges constitutional violations on the part of the Defendants' failure to protect him against an attack by another inmate, despite prior knowledge that an assault was likely. Plaintiff also alleges ADA and/or RA violations claiming that Defendants discriminated against him and failed to accommodate him due to his disability. Both counts brought by Plaintiff in his initial Complaint survived the Court's merits review (Doc. 10, p. 9), but Count 1 was only allowed to proceed against Defendant Phillips and Count 2 was only

allowed to proceed against Defendant Godinez in his official capacity. (*Id.*). This matter is now before the Court on Defendants' Motion for Summary Judgment (Doc. 86).

As a preliminary matter, a discussion of Plaintiff's counsel's actions is pertinent to to the Court's consideration of Plaintiff's response to the summary judgment motion. On February 18, 2015, the undersigned appointed counsel to represent Plaintiff Phelps. (Doc. 40). Counsel was to enter her appearance no later than February 25, 2015. (*Id.* at 2) Rather than following the Court's directive, without having entered her appearance, on January 14, 2016, counsel filed a motion seeking to withdraw as counsel for Plaintiff on the grounds that she failed to renew her admission to the bar for this district court. (Doc. 49). That motion was denied, and the Court allowed her to continue to represent Plaintiff even though she had failed to renew her admission. (Doc. 50). Assigned counsel still did not file her notice of appearance.

Roughly two months later, the Court entered an Order to Show Cause that was at that time being entered as a matter of routine in cases where counsel had failed to renew admission to this bar. The order directed assigned counsel to show cause why she should not be removed from the case for failure to renew. (Doc. 51). Counsel responded by indicating that she did not intend to renew and sought to withdraw from this matter. (Doc. 52). The undersigned, however, deemed the show cause order satisfied, indicating that counsel had previously been allowed to represent Plaintiff, and that she "will be permitted to continue representing Plaintiff." (Doc. 53). Counsel still did not enter her appearance.

On July 15, 2016, Defendants filed a motion for summary judgment. (Doc. 62). No response to this motion was filed, and on November 16, 2016, the Court entered an order noting that it had never granted counsel leave to withdraw and setting a December 16, 2016 deadline for assigned counsel to respond to the summary judgment motion and to enter her appearance. (Doc. 65). The Court was later informed that counsel did not receive notice of the November 16th order, as she had moved to a different law firm and had failed to update her contact information with the Court.

On January 17, 2017, counsel finally entered her appearance on behalf of Plaintiff and sought an extension of time to respond to the summary judgment motion. (Docs. 67, 68). The motion was granted on February 8, 2017, and because the parties were to conduct additional discovery, Defendants were allowed to file an amended summary judgment motion. (Doc. 80).

Defendants re-filed their summary judgment motion, the motion now before the Court, on May 22, 2017, and the Court set the motion for a hearing on July 13th. (Docs. 86, 88). By July 5th, no response had been filed, which prompted the Court to cancel the hearing. (Doc. 89). The Court indicated that due to the failure to respond, Plaintiff would be deemed to have admitted to the merits of the motion in accordance with Local Rule 7.1(g). Plaintiff then filed a Motion to Alter Judgment and a Memorandum in Support. (Docs. 90, 91). Since the Court had not entered judgment, it mooted the motion; however, it indicated that it would consider the motion and memorandum in support as a response to the summary judgment motion. (Doc. 92).

Turning to the summary judgment motion, Defendants assert that they are entitled to judgment as a matter of law on all counts. For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 62).

## II.   FACTUAL BACKGROUND

Plaintiff's suit stems from an incident that occurred on July 6, 2013 when Plaintiff was incarcerated at Pinckneyville Correctional Center. On that date Plaintiff was confined in cell R1-B-16. (Doc. 87-2, p. 3). According to Larue Love, who was employed in the position of Assistant Warden of Programs at Pinckneyville Correctional Center, the cell in which Plaintiff was housed was wheelchair accessible and provided accommodations in compliance with the ADA. (Doc. 87, p. 4). Such wheelchair-accessible cells are larger in size than other general population cells. (*Id.*). Wheelchair-accessible cells are 131.125 square feet in size, and have a wider entryway, amenities positioned lower to the ground, and support bars on the walls. (*Id.*). General population cells that are not wheelchair accessible are 57.375 square feet in size, and do not have the added accommodations that wheelchair-accessible cells have. (*Id.*).

On July 6, 2013, inmates Charlie Moreno, Donnell Clark, and Lester Aldridge were housed in the same cell as Plaintiff. (*See* Doc. 87-3, p. 1 – 2). Moreno and Clark were assigned as Housing Unit Attendants where they were to assist inmates with disabilities with a variety of tasks. (*Id.* at 6 – 7; Doc. 87-2, p. 2). On July 6, 2013, Defendant Phillips was assigned to the R1 cell house during the 3 p.m. to 11 p.m. shift. (Doc. 87-1, p. 1).

At roughly 10:30 p.m., Defendant Phillips went to Plaintiff's cell in response to the emergency call button being activated from within the cell. (*Id.* at 2). According to Defendant Phillips, when he arrived at Plaintiff's cell, he was informed that Plaintiff and inmate Moreno were having problems with one another, and inmate Moreno told Defendant Phillips that he was going to hit Plaintiff if they were not separated. (*Id.*). Defendant Phillips indicates that he then called the zone lieutenant, but before the lieutenant arrived, Moreno punched Plaintiff and threw him out of the wheelchair. (*Id.*). Phillips then called a "10-10," which is the radio code for an emergency. (*Id.*). Other security staff responded and Plaintiff and inmate Moreno were separated and placed on investigative segregative status. (*Id.*).

The only "record" cited to by Plaintiff in his response is his Complaint. Plaintiff provides no evidence in opposition to the motion. According to the allegations in Plaintiff's complaint, when Defendant Phillips arrived at Plaintiff's cell, Plaintiff told Phillips that another inmate was threatening to harm him, and asked Phillips to remove one of them from the cell. (Doc. 1, p. 5). Plaintiff also requested that Phillips call for a Lieutenant; however, according to Plaintiff, Phillips refused, stating that everyone was getting ready to go home. (*Id.* at 5 – 6). After telling Phillips that he was afraid for his safety, Phillips told Plaintiff, "you're a big boy, you can handle the ass-kicking." (*Id.* at 6). According to Plaintiff, the other inmate then asked if Phillips was going to move either one of the inmates, and the defendant stated "I ain't moving nobody[.] [I]f you going to do something, do it." (*Id.*). The other inmate then told Phillips that he was

going to assault Plaintiff, and Phillips responded by saying "I've been standing here for about 15 minutes and you ain't did shit." (*Id.*).  At that point, Plaintiff was then assaulted by the other inmate.  Plaintiff alleges that the assault occurred for roughly four minutes, at which point two other correctional officers arrived, breaking up the attack. (*Id.* at 6 – 7).  Plaintiff alleges that Phillips then laughed and stated" [H]e really gave you a beat down." (*Id.* at 7).

## III.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions.  The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *Archdiocese of Milwaukee v. Doe*, **743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**.  The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**.  A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Serednyj v. Beverly Healthcare, LLC*, **656 F.3d 540, 547 (7th Cir. 2011) (citing** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986))**.  *Accord Bunn v. Khoury Enterpr. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving

party. *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012);** *Righi v. SMC Corp.* **, 632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

IV. **ANALYSIS**

1. **Failure to Protect**

Count 1 of Plaintiff's Complaint alleges that Defendant Phillips violated the Eighth Amendment by failing to protect him from a known, specific threat of assault by another inmate after Plaintiff relayed the threat and requested protection. (Doc. 10, pp. 4-7). Although under the Eighth Amendment prison officials are required to protect inmates from one another, not every injury caused by another inmate translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer v. Brennan*, **511 U.S. 825, 833-34 (1994);** *Zarnes v. Rhodes*, **64 F.3d 285, 289 (7th Cir. 1995)**.

To recover on a failure to protect claim, an inmate must demonstrate that prison officials were "deliberately indifferent" to a sufficiently serious risk of harm to the inmate. *Mathis v. Fairman*, **120 F.3d 88, 91 (7th Cir. 1997);** *Zarnes*, **64 F.3d at 290**. A claim that a prison official was deliberately indifferent to such a risk has both an objective component and a subjective component. *Farmer*, **511 U.S. at 834**. The objective

component is that the inmate must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer* **511 U.S. at 834**. To satisfy this objective prong, a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Brown v. Budz*, **398 F.3d 904, 910 (7th Cir. 2005).** Courts have found that an inmate who is assaulted by other inmates has experienced a substantially serious harm. *Id.*

The subjective component is that the inmate must demonstrate prison officials are "deliberately indifference" to the risk of harm, and such "deliberate indifference" constitutes a state of mind more blameworthy than mere negligence. *Farmer*, **511 U.S. at 834**. To be held liable for deliberate indifference, a prison official

> must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* **at 837**. In other words, to be deliberately indifferent, a prison official must have actual knowledge of a substantial risk that an inmate would be exposed to attacks and threats on his life by prisoners, but disregarded that risk by intentionally refusing or failing to take reasonable measures to deal with the problem**.** *Sowewimo v. Hennrich*, **81 F. App'x 893, 894 (7th Cir. 2003);** *See also Billman v. Ind. Dep't of Corr.*, **56 F.3d 785, 788 (7th Cir.1995) (stating that prison employees acted with deliberate indifference to an inmate's safety if the prison employees are aware of a serious threat and do nothing);** *Davis v. Carter*, **452 F.3d 686, 696 (7th Cir. 2006) ("Deliberate indifference**

**requires that a prison official subjectively know of and disregard a substantial risk of harm.")**. Mere negligence or even gross negligence is not enough to state a claim of deliberate indifference under the Eighth Amendment. *Daniels v. Williams*, **474 U.S. 327, 332 (1986);** *Sowewimo v. Hennrich*, **81 F. App'x 893, 894–95 (7th Cir. 2003)**. Moreover, prison employees acted with deliberate indifference to an inmate's safety only if the exposure was done "gratuitously." *Riccardo v. Rausch*, **375 F.3d 521, 525 (7th Cir. 2004) ("The qualification 'gratuitously' is important, because prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more.")**.

Though Plaintiff responded to Defendants' arguments regarding Plaintiff's failure to protect claim, Plaintiff, through his counsel, failed to provide any facts in opposition whatsoever. After having been given additional time to conduct discovery, Plaintiff's response merely cites to his Complaint. A complaint, however, consists of allegations and is not evidence. Though Plaintiff may have personally written his complaint, the document is not sworn and does not qualify as an affidavit to be considered by the Court. The Court will not consider Plaintiff's Complaint in deciding the summary judgment motion.[1] *See* FED.R.CIV.P. 56(e); *Steinle v. Warren*, **765 F.2d 95, 99 – 100 (7th Cir. 1985) (unsigned and unsworn transcript was inadmissible and could not be considered in opposition to summary judgment motion)**. *See also Gamblin v.*

---

[1] The Court understands that the document it has construed as a response to the summary judgment motion was filed as a motion to set aside judgment under counsel's mistaken belief that the Court had already entered judgment in Defendants' favor. The filing reads as a response, however, and is easily construed as such.

***Groves***, **155 Fed.Appx. 921 (7th Cir. 2005) (summary judgment affirmed where inmate's complaint and unsworn notes were not considered in opposition to summary judgment motion)**.

Plaintiff's allegations claim that Defendant Phillips, the correctional officer, failed to protect Plaintiff by not separating Plaintiff and his cellmate or stepping in to stop the attack by his cellmate once it started. Defendant Phillips does not dispute that there was a substantial risk beforehand that serious harm might actually occur to Plaintiff. Instead, Defendant Phillips argues that the undisputed facts fail to demonstrate that Defendant was deliberately indifferent to a substantial risk of harm to Plaintiff. Having closely reviewed the record, the Court agrees with Defendant Phillips.

The record demonstrates that Defendant Phillips responded to a substantial risk of injury to Plaintiff. When Plaintiff pushed the emergency call button to request help because he was about to be assaulted by one of his non-disabled cellmates, the record indicates that Defendant Phillips responded quickly and came to Plaintiff's cell. When Plaintiff told Defendant Phillips that he was having problems with his cellmate, Inmate Moreno, and Moreno told Defendant Phillips that he was going to beat up Plaintiff if the two were not separated Defendant Phillips promptly called the Zone Lieutenant for assistance and continued to monitor the situation. When Moreno punched Plaintiff and threw him out of his wheelchair before the Lieutenant arrived at Plaintiff's cell, Defendant Phillips called a "10-10" over the radio, indicating that there was an emergency situation, prompting other officers to respond to the situation. After other

security staff arrived to assist in the situation, Plaintiff and Inmate Moreno were separated and placed on investigative status in segregation.

Although Defendant Phillips did not physically separate the inmates, he was not obliged to do so. "Correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene *with a due regard for their safety*." **Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011) (emphasis added).** In *Shields v. Dart*, an inmate was repeatedly stabbed by another inmate in a jail dayroom. **Id. at 180**. Upon witnessing the attack, a guard called for back-up, but remained in a secure area separated from the dayroom by a window. **Id.** Additional officers did not arrive to break up the fight until 15 to 20 minutes later. **Id.** The Seventh Circuit held that the guard was not deliberately indifferent. Though the guard did not physically intervene, she took other steps to intervene by promptly calling for back-up and monitoring the fight.

Likewise, here, though Defendant Phillips did not physically separate Moreno and Plaintiff, he immediately called for backup upon arrival and monitored the situation until other officers arrived. A single guard intervening in a fight between multiple inmates would likely place the guard in danger, and to refrain from being deliberately indifference does not require one to place oneself in unnecessary danger. *See also Guzman v. Sheahan*, **495 F.3d 852, 858 (7th Cir. 2007) (holding that there was no deliberate indifference where officer saw attack on inmate, called for and secured immediate back-up, but did not admonish attackers to stop; officer's actions may**

have constituted negligence but could not be characterized as deliberate indifference); *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002) ("A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy."). Defendant Phillips did what he was required to do: he took steps to intervene by calling for backup.

Even if the Court were to consider Plaintiff's complaint as "evidence," his claims would still not survive summary judgment. Though the complaint alleges that Phillips refused to call for a lieutenant, it alleges that other officers arrived during Plaintiff's assault and broke up the assault. Plaintiff's complaint therefore is still consistent with Defendant Phillips' position that he called for backup. Plaintiff also alleges that Defendant Phillips made certain demeaning statements when the incident occurred. Even if Defendant Phillips did make rude comments to Plaintiff throughout the incident, the use of "derogatory language, while unprofessional and deplorable, does not violate the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (citing *Patton v. Pryzbylski*, 822 F.2d 697, 700 (7th Cir. 1987); *accord Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir.), clarified on rehearing, 186 F.3d 633 (5th Cir. 1999)).

Therefore, there is simply no evidence in the record sufficient to demonstrate that Defendant Phillips was "deliberately indifferent" to a substantial risk of harm to Plaintiff. With no such evidence, and with Plaintiff having multiple opportunities to present such evidence in response to Defendants' motion, the Court is left to find that

there is no genuine issue of fact regarding Defendant Phillips's liability for failure to protect Plaintiff. There is simply no evidence in the record by which a reasonable jury could find Defendant Phillips liable. Defendant Phillips is entitled to summary judgment on this count.

### 2. ADA/RA

Plaintiff's claim against Defendant Godinez falls under the ADA and the RA, both of which seek to prohibit discrimination by public entities on the basis of disability. The ADA provides that "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." **42 U.S.C. § 12132**. The Act prohibits discrimination against people with disabilities in three areas: (1) employment (Title I); (2) public services, programs and activities (Title II); and (3) public and private lodging (Title III). ***Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 913 (2009)**. The Supreme Court has found that correctional facilities are covered by Title II of the Act. ***Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998)**. The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." **29 U.S.C. § 794(a)**.

The Seventh Circuit has found that the RA and the ADA are "co-extensive" and that the analysis is the same except that the RA requires an "additional element the

receipt of federal funds, which all states accept for their prisons." *Jaros v. Illinois Dept. of Corrections*, **684 F.3d 667, 671-72 (7th Cir. 2012) (citing** *Cutter v. Wilkinson*, **544 U.S. 709, 716 n. 4 (2005);** *Gratzl v. Office of Chief Judges*, **601 F.3d 674, 678 (7th Cir. 2010))**. Thus, to state a claim under the RA, the Plaintiff must establish that: "(1) he is qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros*, **684 F.3d at 672 (citing 29 U.S.C. § 705(2)(B);** *Wisconsin Cmty. Services, Inc. v. City of Milwaukee*, **465 F.3d 737, 746 (7th Cir. 2006);** *Grzan v. Charter Hosp. of Nw. Ind.*, **104 F.3d 116, 119 (7th Cir. 1997))**. Although the RA does not expressly require accommodation, the Supreme Court has located a duty to accommodate in the statute generally. Thus, a refusal to make reasonable accommodations, resulting in an inmate being kept from meals and showers on the same basis as other inmates is tantamount to denying access under the RA. *Jaros*, **684 F.3d at 672;** *Cardenas-Uriarte v. United States*, **No. 014-CV-00747-JPG, 2014 WL 3635700, at *4 (S.D. Ill. July 23, 2014)**.  Since Plaintiff, in his response, has failed to address whatsoever Defendants' motion as it relates to Plaintiff's ADA/RA claims, the Court considers the facts set forth by Defendants relating to those claims as undisputed. Fed.R.Civ.P. 56(e).

The undersigned finds no evidence that Plaintiff was housed in an overcrowded cell with non-ADA inmates by reason of his disability. For Plaintiff's claim to succeed, Plaintiff must show that he was housed in an overcrowded cell with non-ADA cellmates "by reason of his disability and not because of some quality that [he] shares

with the public." *Wisconsin Cmty. Services*, **465 F.3d at 748**. Here, from December 28, 2011 to July 6, 2013, Plaintiff was housed at Pinckneyville Correctional Center in housing unit R1, wing B, cell 16 with three other inmates. In failing to respond to the motion for summary judgment regarding the RA/ADA claims, Plaintiff has failed to set forth any evidence that his cell was overcrowded. The wheelchair-accessible cells are more than twice the size of the general population cells and designed with four bunks. Thus, the fact that Plaintiff had as many as three cellmates in a four-man cell at Pinckneyville is of no consequence.

Additionally, Plaintiff being housed with non-disabled inmates is no violation of the ADA. In its Memorandum and Order regarding Plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction in this case, the Court noted that "housing non-ADA inmates with ADA inmates or double celling ADA inmates is no violation of the ADA." *Phelps v. Phillips*, **2015 WL 675407, at \*2 (S.D. Ill. Feb. 17, 2015)**. Moreover, the non-disabled inmates that Plaintiff shared the cell with were Housing Unit Attendants, specifically assigned to provide assistance to their cellmates or other inmates with disabilities.

The undisputed facts also provide no evidence that the Department of Corrections failed to make a reasonable accommodation for Plaintiff. In *Nort v. Brown*, **No. 14CV1663-LAB KSC, 2015 WL 5155195, at \*10 (S.D. Cal. Sept. 1, 2015)**, in adopting the Report and Recommendation of a Magistrate Judge, the District Court in the Southern District of California held that an inmate failed to state viable claims for

violations of the ADA or the RA since his allegations indicated that the defendants acknowledged and reasonably accommodated the inmate's disability by assigning him to the largest cell in the facility that was specifically designated for disabled persons in wheelchairs. The Court finds this opinion, though not binding, is persuasive. Here, Plaintiff was placed in the larger four-man cell because it was wheelchair accessible. The four-man, wheelchair-accessible cells at Pinckneyville are 131.125 square feet in size, and are thus more than twice the size of other general population cells that are 57.375 square feet. These undisputed facts demonstrate that Plaintiff was assigned to a reasonable accommodation in the facility that was specially designed for people with disabilities.

Therefore, with no evidence that Plaintiff was housed in an overcrowded cell with non-ADA inmates due to his disability and that the Department of Corrections denied a reasonable accommodation for Plaintiff, a reasonable jury could not find Defendant Godinez liable under either the ADA or the RA. Defendant Godinez is entitled to summary judgment on this count.

CONCLUSION

The Court finds the record fails to show that Defendant Phillips failed to protect Plaintiff against an attack by another inmate. Further, the Court finds Plaintiff was not subjected to an ADA and/or RA violation. Accordingly, Defendants' Motion for Summary Judgment (Doc. 62) is **GRANTED**, and Plaintiff's claims against the Defendants are **DISMISSED with prejudice**. As all claims against all defendants are

now dismissed, the Court **CANCELS** all future settings, including the jury trial, and any pending motions are deemed **MOOT**. The Clerk of Court is **ORDERED** to **ENTER** judgment and **CLOSE** the case.

   **IT IS SO ORDERED**.
   DATED: 3/28/2018

                                        */s/ Stephen C. Williams*
                                        STEPHEN C. WILLIAMS
                                        **United States Magistrate Judge**